[No. E006798. Fourth Dist., Div. Two. Nov. 22, 1989.]

STATE FARM FIRE AND CASUALTY COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
MARVIN ROSS PATTEN et al., Real Parties in Interest.

**COUNSEL**

Hill, Genson, Even, Crandall & Wade, William R. Lowe and Tod M. Castronovo for Petitioners.

No appearance for Respondent.

Thomas T. Anderson and Samuel Trussell for Real Parties in Interest.

**OPINION**

**McDANIEL, Acting P. J.**—State Farm Fire and Casualty Company, State Farm Mutual Automobile Insurance Company and Karen Parker (referred to collectively henceforth as State Farm) are defendants below in Riverside County Superior Court case No. Indio 45204, Patten, et al. v. State Farm Fire and Casualty Company, et al. In that action, State Farm moved for summary adjudication of certain issues pertaining to its duty to issue a certificate of financial responsibility (commonly known as an SR-22) to the Department of Motor Vehicles (DMV) on behalf of its insureds, the Pattens, contending that, as a matter of law, it was not compelled to issue such a certificate but could choose to do so or not in its unfettered discretion.

Its motion was denied, and it now has petitioned for a writ of mandate to compel the trial court to vacate its order of May 26, 1989, wherein it denied

State Farm's motion for summary adjudication of issues, and to compel it to enter a new order granting the motion in favor of State Farm and against plaintiffs below and real parties in interest here, Marvin Ross Patten and Virginia Patten, State Farm's insureds.

## FACTS

Marvin Ross Patten (Patten) purchased an automobile insurance policy, policy No. S158578-D20-55 (the policy), from State Farm in 1981. This policy provided coverage for accidents "resulting from the ownership, maintenance or use of your car." "Your car" was defined as the particular car, in Patten's case a 1982 Toyota, described in the policy. The policy also provided that "[t]he liability coverage extends to the use, by an insured, of a newly acquired car, a temporary substitute car, or a non-owned car." "An insured," when the term was used in reference to "your car," "a newly acquired car" or "a temporary substitute car" was defined to mean the insured, the insured's spouse, relatives of the insured, any other person using such a car within the scope of consent given by the insured or the insured's spouse, and any other person or organization liable for the use of such a car by one of the above-defined insureds.

The policy also provided: "Financial Responsibility Law. When certified under any law as proof of future financial responsibility, and while required during the policy period, this policy shall comply with such law to the extent required. The insured agrees to repay us for any payment we would not have had to make under the terms of this policy except for this agreement."

In 1983, Patten was involved in an automobile collision which resulted in a stipulated judgment against him entered in June 1983. Presumably, although the record is not explicit on this point, Patten did not contact his insurance company regarding the collision, and it is not apparent from the record what vehicle or driver from the Patten entourage was involved in the collision or whether such vehicle or driver was covered by insurance.

In 1985, Patten defaulted on installment payments which had been ordered by the municipal court pursuant to the stipulated judgment. In September 1985, Patten received a letter from the DMV notifying him that his license would be suspended in a few days, and that it would remain suspended until he filed with the DMV a copy of a satisfaction of the stipulated judgment and also provided the DMV with some form of proof of his ability to respond in damages in the event he should be involved in future accidents. Listed on the notice were four methods for providing the DMV with

such proof, the first of which was to obtain from an insurance company a certificate evidencing proof of ability to respond in damages, showing that Patten was "covered by a motor vehicle liability policy. The form may show coverage for you when driving: (A) only vehicles registered in your name (owner's policy), or (B) only vehicles you do not own (operator's policy), or (C) All vehicles whether you own them or not. *See Note . . . . *Note: You should contact an insurance agent or broker . . . to obtain the California insurance proof certificate. If you have to use the California Automobile Assigned Risk Plan to obtain insurance, the agent or broker will assist you in making application through the plan and will answer questions relating to your insurance needs. . . ." The remaining three methods involved posting some form of security.

Patten obtained and filed with the DMV an acknowledgment of satisfaction of the stipulated judgment. He also asked State Farm, his insurer, to provide the DMV with the certificate evidencing proof of ability to respond in damages, otherwise known as an SR-22 form. State Farm refused to issue the certificate, and in October 1985, sent him a notice cancelling his policy, which notice was signed by Karen Parker, State Farm's operations manager. State Farm also apparently then cancelled two other insurance policies held by Patten, one of which covered his wife's Toyota and one of which covered the family's motor home.

Patten and his wife (the Pattens) filed suit against State Farm. After several amendments, their third amended complaint, the pleading relevant to this petition, contained causes of action for breach of the duty of fair dealing and good faith, breach of fiduciary duty, intentional misrepresentation, negligent misrepresentation, and breach of statutory duties. In this last cause of action, the Pattens alleged not only that State Farm had violated its statutory duties under Insurance Code section 790.03, related to unfair business practices concerning representations regarding the extent of coverage, but that it had also violated its duty, under Insurance Code section 655, to provide the Pattens and the DMV with a certificate as provided for under Vehicle Code sections 16431 and 16432.

The Pattens's third amended complaint also alleged that the notice of cancellation constituted a fraudulent misrepresentation because, although the notice of cancellation indicated it was being carried out for three reasons, an October 5, 1981, accident, a January 13, 1983, accident, and Patten's September 9, 1985, license suspension, the Pattens were informed and believed that such reasons were not the actual reasons for the cancellation but that instead the cancellation was effected for the purpose of placing the Pattens into the assigned risk category of insureds, and that State Farm's

refusal to issue the SR-22 was done intentionally in order that the Pattens "could [not—*sic*] prevent the continued suspension" of Patten's driving privileges, which suspension would then form a basis for cancelling his policy.

State Farm moved for summary adjudication of certain issues, including several issues related to its statutory and legal duties to issue an SR-22. Its motion was granted in part and denied in part. Thereafter, it brought the motion for summary judgment, the ruling on which forms the basis for this petition, in which it again asked for summary adjudication of three issues related to its duty to issue an SR-22. Those issues which it urged to be without controversy were as follows:

"1.   State Farm had no legal duty to file an SR-22 after the suspension of plaintiff Marvin Patten's driver's license.

"2.   State Farm had no statutory duty to issue an SR-22 after the suspension of plaintiff Marvin Patten's driver's license.

"3.   An insurer has no legal obligation to file an SR-22 on behalf of an insured covered under a policy of insurance issued pursuant to Insurance Code section 11580.1."

In support of its motion, it submitted a separate statement of uncontraverted facts: "1.   Policy number S158 578-D20-55 was issued to Marvin Ross Patten as the named insured pursuant to Insurance Code section 11580.1. [Declaration of W. Jeffrey Robbins.]

"2.   On September 9, 1985, the driver's license of plaintiff Marvin Ross Patten was suspended by the California Department of Motor Vehicles. [Order of issues deemed to be without substantial controversy filed January 25, 1989.]"

Attached to the motion was a "supplemental" declaration of W. Jeffrey Robbins, which stated, in relevant part: "Policy number S158 578-D20-55 was issued to Marvin Ross Patten as the named insured pursuant to Insurance Code section 11580.1. It was thus a policy voluntarily issued by State Farm as opposed to a policy issued pursuant to the Assigned Risk Plan. Policy number S158 578-D20-55 was never certified as proof of ability to respond in damages within the meaning of the Financial Responsibility Act."

The supplemental declaration contained no facts indicating the basis of Mr. Robbins' personal knowledge of the facts contained in his declaration.

However, State Farm's original motion for summary adjudication of issues had also contained a declaration from Mr. Robbins, in which he stated that he was an operations superintendent for State Farm and was familiar with the particular policy in question and the concomitant underwriting file.

The Pattens opposed the motion for summary adjudication of issues. They admitted that fact No. 2, the suspension of Patten's license, was uncontroverted, but asserted that fact No. 1, whether the policy had been issued "pursuant to" any particular code section, was disputed, on the ground that (1) Robbins' declaration was not competent evidence of such fact; (2) the policy itself in no way indicated that it was issued pursuant to any particular code section, and (3) in fact, the policy referred to "the Financial Responsibility Law."

In regard to Robbins' declaration, the Pattens submitted objections that his conclusion that the policy was issued pursuant to Insurance Code section 11580.1 was not supported by any pertinent facts, and that his declaration merely attempted to draw a legal conclusion.

The Pattens also submitted their own separate statement of controverted facts, which actually was more in the nature of a statement of controverted *issues*: "1. Whether defendants had a legal right, whether under statute, case law, the contract, or its implied covenants, to refuse Mr. Patten's request for a Certificate of Proof to Respond in Damages.

"*Evidence*:

California Insurance Code, Section 655. *Spindle* vs. *Travelers* (1977) 66 C.A. 3d 951. Plaintiffs' Exhibit 17 (the insurance contract).

"2.    Whether defendants' failure to honor Mr. Patten's request for a Certificate of Proof of Ability to Respond in Damages was done in bad faith, resulting in the non-reinstatement of his driving privileges.

"*Evidence*:

1. Plaintiffs [*sic*] Exhibits 1 through 17."

The Pattens' opposition also asked the court to take judicial notice of the earlier motion for summary adjudication and the opposition and reply thereto, and of the California Senate's Senate Final History regarding Senate Bill No. 1402-Bradley, which gave the legislative history of Insurance Code section 655. That section provides: "Every insurer issuing policies of

motor vehicle liability insurance within the meaning of Section 16450 of the Vehicle Code, shall also, as an incident thereto, complete and file the certificate or certificates provided for under Sections 16431 and 16432 of the Vehicle Code."

In reply to the Pattens' opposition to the motion, State Farm, without making a formal request that the court take judicial notice of it, relied upon a copy of the DMV bulletin "Instructions for Filing Proof of Ability to Respond in Damages Section 16430 V.C.," (a copy of which is attached to this opinion as appen. A), which it argued was evidence that the DMV recognized that an insurer which issues policies pursuant to Insurance Code section 11580.1 has no duty to issue an SR-22 upon demand. At the hearing on the motion, the Pattens objected to the admission of the bulletin, but the court allowed the bulletin to come in.

Following the hearing, the trial court *apparently* denied State Farm's motion for summary adjudication. We say "apparently" because State Farm, in its petition for extraordinary relief, *failed to attach as an exhibit the signed and filed order denying its motion,* and instead attached as exhibit I to its petition what it itself denominated "[a] copy of the *proposed* order denying defendants' motion . . . ." (Italics added.) █ It is axiomatic that to review an order, the reviewing court must have a copy of the *actual* order, not a proposed order. Having a copy of such an order is *particularly* important in connection with the review of the denial of a motion for summary judgment, because the trial court is required, by Code of Civil Procedure section 437c, to state the basis for the denial and the evidence which shows that facts are controverted.

At oral argument, counsel for State Farm advised us that he had undertaken to petition for relief without waiting for an order to be entered because of his reading of Code of Civil Procedure section 437c, which indicated to him that prompt action was necessary. However, the relevant portion of section 437c requires prompt action only *after* an order denying summary judgment or adjudication of issues has been entered: "Upon entry of any order pursuant to this section except the entry of summary judgment, a party may, within 10 days *after service upon him or her of a written notice of entry of the order,* or within such further time not exceeding 20 days as the trial court may for good cause allow, petition an appropriate reviewing court for a peremptory writ. . . ." (Code Civ. Proc., § 437c, subd. (*l* ), italics added.)

Obviously, no notice of entry can be sent until a formal order has been entered.

In any event, following the denial of its motion, State Farm filed a petition for a writ of mandate to compel the trial court to vacate its order and to enter an order granting the motion. We issued an alternative writ, and now, with the benefit of extensive briefing by both sides, have come to the conclusion that the trial court should have granted State Farm's motion as to issue No. 2, but that it correctly denied State Farm's motion for summary adjudication of issues Nos. 1 and 3.

DISCUSSION

*Introduction to the Statutory Scheme*

*Automobile Liability Insurance Versus Motor Vehicle*<br>*Liability Insurance*

■ The Insurance Code and the Vehicle Code make a distinction between "automobile liability insurance" and "motor vehicle liability insurance." The legislative intent as to the requirements for each type of insurance is set forth in Insurance Code section 11580.05: "The Legislature declares that the public policy of this state in regard to provisions authorized or required to be included in policies affording *automobile liability insurance or motor vehicle liability insurance* issued or delivered in this state shall be as stated in this article, that this article expresses the total public policy of this state respecting the content of such policies, . . . The Legislature further declares that it is the intent of the Legislature that *the requirements set forth in Article 2 (commencing with Section 16450) of Chapter 3 of Division 7 of the Vehicle Code shall apply only to an owner's policy or operator's policy of liability insurance certified as provided in Section 16431 of the Vehicle Code as proof of ability to respond in damages,* and that the requirements set forth in Article 4 (commencing with Section 11620) of Chapter 1 of Part 3 of Division 2 of the Insurance Code shall apply only to automobile liability insurance policies issued under the California Assigned Risk Plan. *Except as provided above, any other policy issued or delivered in this state affording liability insurance with respect to ownership, maintenance, or use of a motor vehicle shall comply with the requirements set forth in Sections 11580, 11580.1, and 11580.2.*" (Italics added.)

Insurance Code section 11580.1 in essence defines what an "automobile liability insurance" policy is by listing what provisions such a policy must contain. Section 11580.1 provides, in relevant part: "No policy of *automobile liability insurance* described in Section 16054 of the Vehicle Code covering liability arising out of the ownership, maintenance or use of any

motor vehicle shall be issued or delivered in this state . . . unless it contains the provisions set forth in subdivision (b).

"(b) . . . (4) Provision affording insurance to the named insured with respect to *any motor vehicle covered by such policy,* and to the same extent that insurance is afforded to the named insured, to any other person using, or legally responsible for the use of, such motor vehicle, provided such use is by the named insured or with his or her permission, express or implied, and within the scope of such permission, . . .

"(c) . . . any such policy of automobile liability insurance . . . may, by appropriate policy provision, be made inapplicable to . . . the following:

"(8) Any motor vehicle or class of motor vehicles, as described or designated in the policy, with respect to which coverage is explicitly excluded, in whole or in part. . . ."

Thus, an automobile liability insurance policy need not cover *all* vehicles registered under the insured's name, and need not be certified.

In contrast, Vehicle Code section 16450 (which is contained in ch. 3 of div. 7 of the Veh. Code) defines *"motor vehicle liability policy"* as follows: "A 'motor vehicle liability policy,' as used in Chapters 2, 3 and 4 of this division, means *an owner's policy or an operator's policy, or both,* of liability insurance, *certified as provided in Section 16431 as proof of ability to respond in damages,* issued by an insurance carrier authorized to transact such business in this State to or for the benefit of the person named therein as assured. *Any requirements set forth in said Chapters 2, 3 and 4 relating to a motor vehicle liability policy shall apply only to those policies which have been certified as proof of ability to respond in damages as provided in Section 16431."* (Italics added.)

Vehicle Code section 16431 provides: "Proof of ability to respond in damages may be given by the written certificate or certificates of any insurance carrier duly authorized to do business within the state, that it has issued to or for the benefit of the person named therein *a motor vehicle liability policy as defined in Section 16450,* which, at the date of the certificate or certificates is in full force and effect." (Italics added.)

Vehicle Code section 16432 provides that such certificates must contain certain representations: "The department shall not accept any insurance certificate or certificates unless the same covers *all motor vehicles registered in the name of the person* furnishing such proof, except that this provision

shall not apply to vehicles in storage if the current license plates and registration card are surrendered to the department in Sacramento. *A certificate, under penalty of perjury, of the licensee who causes such certificate or certificates of insurance to be tendered as proof of financial responsibility that the certificate or certificates cover all vehicles registered in his name shall be accepted by the department as prima facie evidence of such fact.*" (Italics added.)

Thus, unlike an automobile liability insurance policy, a motor vehicle liability policy must be certified, and must cover *all* vehicles registered in the insured's name, or *all* vehicles which the insured may be driving.

### *Financial Responsibility Requirements*

■ *Any* driver who has been involved in an accident, regardless of the type of insurance the driver has, is required to furnish the DMV with proof of financial responsibility. (Italics added.)

Vehicle Code section 16430 is the first section in chapter 3, "Proof of Ability to Respond in Damages." It is entitled "Proof required," and provides that: "Proof of ability to respond in damages when required by this code means proof of ability to respond in damages resulting from the ownership or operation of a motor vehicle and arising by reason of personal injury to, or death of, any one person, of at least fifteen thousand dollars ($15,000), and, subject to the limit of fifteen thousand dollars ($15,000) for each person injured or killed, of at least thirty thousand dollars ($30,000) for such injury to, or the death of, two or more persons in any one accident, and for damages to property (in excess of five hundred dollars ($500)), of at least five thousand ($5,000) resulting from any one accident. *Proof of ability to respond in damages may be given in any manner authorized in this chapter.*"

Vehicle Code section 16054, referred to in Insurance Code section 11580.1 ("No policy of *automobile liability insurance* described in Section 16054 of the Vehicle Code covering liability arising out of the ownership, maintenance or use of any motor vehicle shall be issued or delivered in this state . . . unless it contains the provisions set forth in subdivision (b). . . .(b) . . . [¶] (4) Provision affording insurance to the named insured with respect to *any motor vehicle covered by such policy,* and to the same extent that insurance is afforded to the named insured, to any other person using, or legally responsible for the use of, such motor vehicle,") provides, also in relevant part: "Proof [of financial responsibility by a driver involved

in an accident required to be reported by Vehicle Code section 16000] may be established by filing with the department satisfactory evidence:

"(a) That the *owner* had *an automobile liability policy, a motor vehicle policy, or bond* in effect at the time of the accident with respect to the *driver or the motor vehicle involved in the accident,* unless it is established that at the time of the accident the motor vehicle was being operated without the owner's permission, . . .

"(b) That the *driver* of the motor vehicle involved in the accident, *if he was not the owner of the motor vehicle,* had in effect at the time of the accident *an automobile liability policy or bond* with respect to his or her *operation of the motor vehicle not owned by him or her.*

"(c) That such liability as may arise from the driver's operation of the motor vehicle involved in the accident is, in the judgment of the department, covered by some form of liability insurance or bond.

"(d) Any *automobile liability policy or bond* referred to in this section shall comply with the requirements of Section 16056 [those requirements being that the policy or bond must be issued by a company authorized to do business in California and must be for at least a specified minimum amount] and Sections 11580, 11580.1, and 11580.2 of the Insurance Code, *but need not contain provisions other than those required by those sections, and shall not be governed by Chapter 3 (commencing with Section 16430)."* (Italics added.)

In other words, a driver involved in an automobile accident who has an automobile liability insurance policy, i.e., an uncertified policy which need not cover *all* vehicles registered in the owner's name, may give proof of financial responsibility by filing with the DMV evidence of such a policy if such policy covers either the driver or the vehicle involved in the accident. (Veh. Code, § 16054, subd. (a).) If proof is given by showing possession of an automobile liability policy or bond, as opposed to possession of a motor vehicle liability policy, the automobile policy need not contain provisions other than those required in Insurance Code sections 11580, 11580.1 and 11580.2 (which do not require that the automobile liability policy cover *all* vehicles registered in the owner's name), and the policy shall not be governed by chapter 3 of the Vehicle Code's division 7, "Financial Responsibility Laws," including sections 16431 and 16432, which require that motor vehicle liability policies be certified and that the coverage of such certified policies be over *all* vehicles registered in the insured's name.

### An Insurer's Duty to Certify Policies of Insurance

■ Insurance Code section 655, which is entitled, "Proof of ability to respond in damages; completion and filing by insurer," provides: "Every insurer issuing policies of *motor vehicle liability insurance within the meaning of Section 16450 of the Vehicle Code,* shall also, as an incident thereto, complete and file the certificate or certificates provided for under Sections 16431 and 16432 of the Vehicle Code." (Italics added.)

There is no corresponding duty to certify "automobile liability insurance" policies. This is not surprising, given that certification, as noted above, is one of the defining elements which separates "motor vehicle liability" policies from "automobile liability policies." In fact, section 655 is worded in a way which acknowledges that certification is a defining element of a motor vehicle liability policy, because the section provides that completing and filing the certificate required by Vehicle Code sections 16431 and 16432 is *an incident* to *issuance* of a motor vehicle liability policy. In other words, completing and filing a certificate is not something which is done *after* the motor vehicle liability policy is issued and upon the occurrence of an accident which then brings into play the insured's duty to provide the DMV with proof of ability to respond in damages.

### Application of the Statutory Scheme to State Farm's Motion for Summary Judgment

Having reviewed the relevant code sections, we now consider the application of those sections to the facts of this case, in the context of the parties' arguments as to the propriety of denying State Farm's motion for summary adjudication of issues. According to the Pattens, the motion for summary adjudication could not be granted because there exist the following *issues* of triable fact which the Pattens raised in their opposition:

(1) whether the policy in issue was a certified policy, a policy issued pursuant to Insurance Code section 11580.1, or a policy issued pursuant to the assigned risk program, because State Farm did not submit any competent evidence as to the nature of the policy;

(2) whether the policy, by its terms, qualifies as a certified policy subject to Insurance Code section 655;

(3) whether State Farm would have incurred additional risk (i.e., whether the coverage extended under the policy would have been enlarged) by issuing an SR-22.

The Pattens also contend that the trial court properly denied the motion for summary adjudication of issues because State Farm had a legal duty, under the Insurance Code, to provide them with proof of ability to respond in damages.

■ The existence of triable issues of fact not raised by the moving party but raised by the party opposing a motion for *summary judgment* may preclude the granting of such a motion. However, the existence of such issues will not preclude the granting of summary adjudication of the *issues* raised by the moving party in a motion for *summary adjudication of issues.* The only thing which will prevent the entry of an order adjudicating such issues as being without substantial controversy is the existence of evidence showing such issues to be in dispute.

We thus must consider whether the issues which State Farm asserted to be without substantial controversy were contraverted by any evidence. Those issues were:

"1. State Farm had no legal duty to file an SR-22 after the suspension of plaintiff Marvin Patten's driver's license.

"2. State Farm had no statutory duty to issue an SR-22 after the suspension of plaintiff Marvin Patten's driver's license.

"3. An insurer has no legal obligation to file an SR-22 on behalf of an insured covered under a policy of insurance issued pursuant to Insurance Code section 11580.1."

In support of these issues, State Farm, as noted above, submitted a separate statement of uncontroverted facts: "1. Policy number S158 578-D20-55 was issued to Marvin Ross Patten as the named insured pursuant to Insurance Code section 112580.1. (Declaration of W. Jeffrey Robbins.)

"2. On September 9, 1985, the driver's license of plaintiff Marvin Ross Patten was suspended by the California Department of Motor Vehicles. (Order of issues deemed to be without substantial controversy filed January 25, 1989.)"

Attached to the motion was a "supplemental" declaration of W. Jeffrey Robbins, which stated, in relevant part: "Policy number S158 578-D20-55 was issued to Marvin Ross Patten as the named insured pursuant to Insurance Code section 11580.1. It was thus a policy voluntarily issued by State Farm as opposed to a policy issued pursuant to the Assigned Risk Plan. Policy number S158 578-D20-55 was never certified as proof of ability to

respond in damages within the meaning of the Financial Responsibility Act."

The supplemental declaration contained no facts indicating the basis of Mr. Robbins' personal knowledge of the facts contained in his declaration. However, as earlier noted, State Farm's original motion for summary adjudication of issues had also contained a declaration from Mr. Robbins, in which he stated that he was an operations superintendent for State Farm and was familiar with the particular policy in question and the concomitant underwriting file.

The Pattens objected to the Robbins declaration on the ground of lack of personal knowledge, and argued in their opposition that he was neither a lawyer nor judge so as to be able to give an opinion as to whether the policy was issued "pursuant to" a particular code section. However, whether or not Robbins had such expertise, his background and familiarity with the policy and file in question was sufficient to allow him to testify whether or not the policy had ever been certified as proof of ability to respond in damages. The fact that the policy had *not* been so certified was not contradicted by the Pattens, who, in fact, were suing because of State Farm's refusal to certify the policy.

As noted above, the element of certification pursuant to Vehicle Code sections 16431 and 16432 is part of what makes a motor vehicle liability policy such a policy, as opposed to a policy issued pursuant to only the basic insurance requirements set out in Insurance Code section 11580.1. The policy issued to Patten in 1981 was not certified, and it did not cover, in the generic sense, *all* vehicles registered in Patten's name, just the Toyota designated on the policy. (Of course, if the Toyota named on the policy had been the only vehicle registered in Patten's name, then the policy, in a specific sense, would have covered all vehicles registered in Patten's name. However, in their opposition to the motion for summary adjudication of issues, the Pattens stated that their other vehicles [Mrs. Patten's Toyota and the Pattens' motor home] were covered by separate insurance policies, which they attached as exhibits to their opposition.)

It would therefore follow that, by definition, the policy issued to Patten could not have been a "motor vehicle liability" policy, because such policies must be certified as an incident of issuance, and because such policies must cover *all* vehicles registered in the insured's name. Thus, because the policy was not a motor vehicle liability insurance policy, State Farm was not required by Insurance Code section 655 to certify the policy.

State Farm *might* have been required to certify the policy if it had intentionally or negligently led the Pattens to believe that the policy *was* a motor vehicle liability insurance policy. In this regard, we note that two of the Pattens' causes of action are for intentional and negligent misrepresentation. If the Pattens alleged that State Farm misrepresented the nature of the policy, i.e., led them to believe that the policy was one for "motor vehicle liability" rather than "automobile liability," then there might be an argument that State Farm would be estopped to deny that the policy was such a policy, and it would then have the concomitant duty to certify the policy as required by Insurance Code section 655. However, the misrepresentations claimed to have occurred were simply that State Farm was properly licensed, that "like a good neighbor, [it would] always [be] there," and that it could be expected to "abide by the requirements of California Insurance Code § 655, § 657, § 660, et seq., and § 790.03, as well as other pertinent governing Insurance Code and Vehicle Code sections."

Accordingly, State Farm was entitled to have its issue No. 2, "2. State Farm had no statutory duty to issue an SR-22 after the suspension of plaintiff Marvin Patten's driver's license," adjudicated as being without substantial controversy.

■ However, State Farm was not entitled to have issues Nos. 1 and 3 ("1. State Farm had no *legal* duty to file an SR-22 after the suspension of plaintiff Marvin Patten's driver's license," and "3. An insurer has no *legal* obligation to file an SR-22 on behalf of an insured covered under a policy of insurance issued pursuant to Insurance Code section 11580.1" (italics added)) similarly adjudicated as being without substantial controversy, for the following reasons.

First, in our present view, this lawsuit may be the result of confusion over the *type* of certificate or evidence required by the DMV when an accident has occurred and the driver or vehicle involved in the accident already has automobile liability insurance. According to our reading of the statute, a driver or owner who already has automobile liability insurance at the time of an accident need not obtain the type of certificate contemplated by Insurance Code section 655; instead, such a driver or owner need only provide the DMV with proof of the existence, at the time of the accident, of automobile liability insurance covering either the driver or the vehicle involved. ("Proof [of financial responsibility by a driver involved in an accident required to be reported by Vehicle Code section 16000] may be established by filing with the department satisfactory evidence: (a) That the *owner* had *an automobile liability policy, a motor vehicle policy, or bond* in effect at the time of the accident with respect to the *driver or the motor*

*vehicle involved in the accident,* unless it is established that at the time of the accident the motor vehicle was being operated without the owner's permission, . . .")

Here, the Pattens already had automobile liability insurance at the time of the 1983 accident. It is not apparent from the record, however, whether their policy covered either the particular driver or motor vehicle involved in the accident.

If the policy *did* cover the driver or vehicle involved in the accident, then the Pattens would not have needed the kind of certificate contemplated by Insurance Code section 655, and instead could have filed with the DMV "satisfactory evidence" of the coverage provided by their existing automobile liability insurance policy. Unfortunately, we cannot tell from the record what "satisfactory evidence" means to the DMV. It is possible that an insured could produce a copy of the policy, billing statements and cancelled checks to show that coverage was in existence at the time of the accident. However, practically speaking, it seems likely that a certificate or statement from the insurance company would be necessary, because insurance coverage can be cancelled and unearned premiums can be returned, a matter which would not be apparent from the kinds of proof which an insured might offer. Whether such information can or should be provided by way of an SR-22 or some other form cannot be discerned from the existing record.

Assuming that such was the case, the issue then becomes whether or not the Pattens asked State Farm for a certificate or statement regarding their insurance policy then in existence, and whether State Farm had a duty to provide such a certificate. Arguably, such a duty to provide proof of existing coverage would be based not on statute or on express contractual terms, but rather on the implied covenant of good faith and fair dealing implied in every contract, or on some type of fiduciary duty.

If, on the other hand, the Pattens' existing policy did *not* cover the driver or vehicle involved in the accident, then they would have been uninsured for the purposes of showing ability to respond in damages for that particular accident. At that point, they would have needed to provide the DMV with proof that they had obtained a motor vehicle liability insurance policy, i.e., a policy which would cover *all* vehicles driven by them. This in turn would require them to provide the DMV with the kind of certificate contemplated by Insurance Code section 655.

If we assume that the Pattens' policy did *not* cover the accident which occurred in 1983, the issue then becomes whether the Pattens asked State

Farm for the kind of certificate contemplated by Insurance Code section 655, and whether State Farm had a duty based either on statute or some other ground (such as contract) to provide them with such a certificate.

According to our interpretation of the statutory scheme, as discussed above, State Farm was not required by Insurance Code section 655 or any other statute to certify the Pattens' existing policy of insurance and thus to transmute their automobile liability insurance policy into a motor vehicle liability insurance policy. This does not mean, however, that State Farm might not have had a duty to do so based on the parties' agreement.

As noted above, the policy itself provided: "Financial Responsibility Law. When certified under any law as proof of future financial responsibility, and while required during the policy period, this policy shall comply with such law to the extent required. The insured agrees to repay us for any payment we would not have had to make under the terms of this policy except for this agreement."

This provision clearly contemplates that the policy as written *could* be certified as proof of financial responsibility. The last sentence in this provision also indicates that (1) the insurer was aware that certification of the policy could enlarge the scope of coverage, and hence increase the insurer's possible payments under the policy, and (2) the insurer was willing to accept the insured's promise of repayment of payments made as a result of the enlarged coverage in exchange for providing such certification.

The remaining question then is whether the above noted provision imposed upon State Farm a contractual duty to issue, upon demand by the insureds, the kind of certificate contemplated by Insurance Code section 655. We think that the provision as worded raises at least a triable issue of fact as to the existence of such a duty, i.e., it is possible that a given state of facts would impose such a duty.

First, the provision is worded "[w]hen certified," not "*if* certified," which *may* be an indication that certification was not solely at the discretion of the insurer. Second, the consideration for extended coverage upon certification, which consideration consisted of the insured's promise to repay any payments necessitated by the extended coverage, is spoken of in present, rather than conditional or future, terms: the insured "*agrees* to repay," not the insured "*will* agree to repay *if* the policy is certified." Third, the sentence "[t]he insured agrees to repay us for any payment we would not have had to make under the terms of this policy *except for this agreement*" (italics added) indicates that there is a presently existing *agreement* related to the

certification of the policy, as opposed to a conditional or possible future agreement regarding certification, which suggests in turn that future certification of the policy is not left solely to the insurer's discretion. ■ Fourth, to the extent this provision may be said to be ambiguous, general rules of statutory construction would require that the ambiguity be interpreted against the drafter, and, although the identity of the drafter has not been established as a factual matter, it is likely that State Farm drafted the policy in question.

Thus, State Farm was not entitled to have adjudicated as conclusively established either the specific issue that it had no *legal* duty to issue a certificate to Patten or the general issue that an insurer has no *legal* duty to issue a certificate on a policy issued pursuant to Insurance Code section 11580.1, i.e., an automobile liability insurance policy.

## DISPOSITION

The writ is issued directing the trial court to vacate its order of May 26, 1989, and to enter a new order granting State Farm's motion for summary adjudication as to issue No. 2 only, and denying said motion as to issues Nos. 1 and 3 for the reasons expressed in this opinion. Each party to bear its own costs.

Dabney, J., and Hollenhorst, J., concurred.

1476

## APPENDIX A

*A Public Service Agency*

## INSTRUCTIONS FOR FILING PROOF OF ABILITY TO RESPOND IN DAMAGES
## SECTION 16430 V.C.

**PROOF OF ABILITY TO RESPOND IN DAMAGES MAY BE GIVEN IN ANY OF FOUR WAYS:**

1.  Proof may be filed by having an insurance company, licensed to do business in California, file an Insurance Certificate (Form SR 22/SR1P) with the department showing you are insured. The certificate may cover:

    a. All vehicles registered in your name. This permits you to drive only vehicles you own or vehicles registered to you, *or*

    b. You as a driver operating vehicles not owned by you. This permits you to drive only vehicles owned by or registered to other persons, *or*

    c. Your driving both owned and non-owned vehicles.

    If you desire to file proof by means of insurance, contact your insurance agent who will be better able to help you.

2.  Proof may be filed by depositing $35,000 at a bank or savings and loan association and assigning that deposit to the department. You may obtain additional information regarding deposits by calling (916) 732-7561 or by writing the Financial Responsibility Area, P. O. Box 942884, Sacramento, CA 94284-0001.

3.  Proof may be filed by submitting the bond of a surety company authorized to do business in California.

4.  Proof may be filed by a DMV approved self-insurer on behalf of an employee to permit his driving vehicles owned by the self-insurer within the scope of employment.
    (See Vehicle Code Section 16436)

You may wish to file an Insurance Certificate but your regular insurance company refuses to issue the certificate. In this case, you may make application through any insurance agent or broker to the California Automobile Assigned Risk Plan for such insurance. If you want to write or call the plan directly, the address and telephone number are:

> California Automobile Assigned Risk Plan
> P. O. Box 7917
> San Francisco, CA 94120-7917
>
> One Hallidie Plaza, Suite #200
> San Francisco, CA 94102
>
> Telephone: 1—800—622-0954 (toll free)