Opinion
 

 DOSSEE, J.
 

 This dispute between an insurance carrier and its policyholder, Bell’s Ambulance Service, requires us to consider the impact of a Sonoma County ordinance requiring ambulance services to maintain liability insurance and requiring advance notice to the county of any modification of the policy.
 

 Facts
 

 Defendant Bell’s Ambulance Service was the named insured of an insurance policy labeled a “business automobile” policy, effective from June 25, 1992, to June 25,1993, issued by plaintiff Empire Fire and Marine Insurance Company (Empire). When the policy was issued, Wayne F. Bell, the company’s manager, provided Empire with a copy of the Sonoma County ordinance.
 
 [1]
 

 During the policy period, Wayne F. Bell lost his driver’s license, and in December 1992 he signed a “Driver Exclusion” endorsement excluding from
 
 *1414
 
 coverage any accidents involving Wayne F. Bell as driver.
 
 [2]
 
 On February 8, 1993, Natasha Downing was injured in an accident caused by Wayne F. Bell while he was operating an ambulance owned by Bell’s Ambulance Service. (After the accident, Wayne F. Bell obtained a driver’s license, and on March 30, 1993, he was reinstated as a driver under the policy.)
 

 The insurer, Empire, filed the present declaratory relief action and then moved for summary judgment, asserting that pursuant to the driver exclusion Empire had no duty to defend or indemnify Bell’s Ambulance Service (Bell).
 

 Both Bell and cross-defendant Downing opposed the motion, raising various points of contention. Downing’s principal argument rested upon the provision of the Sonoma County ordinance requiring ambulance services to maintain insurance coverage. Downing conceded that there were no disputed issues of fact but argued that the driver exclusion was ineffective as a matter of law in that it nullified the compulsory insurance provision of the Sonoma County ordinance. In response, Empire asserted that the Sonoma County ordinance is preempted by Insurance Code section 11580.1, which expressly allows a driver exclusion.
 

 The trial court granted Empire’s motion for summary judgment, concluding that there were no disputed issues of fact and as a matter of law Empire had no duty to defend or indemnify. The trial court reasoned that the driver exclusion is authorized by Insurance Code section 11580.1 and the Sonoma County ordinance could not require more of an insurer than is required by the Insurance Code.
 
 [3]
 
 Downing appeals.
 
 [4]
 
 We reverse the judgment entered in favor of Empire.
 

 Discussion
 

 Empire’s position in this dispute is not well delineated. As we understand the argument, Empire contends that insurance companies are governed
 
 *1415
 
 exclusively by state law, viz., the Insurance Code; insurance companies cannot be subject to local regulations; the Insurance Code allows a driver exclusion such as the one agreed to here; therefore, the driver exclusion cannot be rendered ineffective by the Sonoma County ordinance. We reject Empire’s argument.
 

 First, as we discuss in part A below, we reject Empire’s assertion that the driver exclusion here is expressly permitted by the Insurance Code. Hence, we need not examine Empire’s contention that the Insurance Code takes precedence over the Sonoma County ordinance.
 

 Furthermore, we reject Empire’s argument that the Sonoma County ordinance is an ineffective regulation of insurance companies. The ordinance requires all ambulance services to obtain a permit from the county, and among the prerequisites for a permit is proof of liability insurance. As we will explain in part B, the Sonoma County ordinance is a valid and enforceable regulation of ambulance services, Moreover, as we will explain in part C, when, as here, insurance coverage is required by law as a condition to doing business, the provisions of the compulsory insurance law are incorporated into the insurance contract so that an insurer providing a certificate of insurance as proof that the regulated business entity has insurance remains liable on its policy until the requisite notice has been given to the regulatory agency.
 

 A.
 
 Insurance Code
 

 In support of its contention that the driver exclusion endorsement is expressly authorized by the Insurance Code, Empire relies upon subdivision (d)(1) of section 11580.1, which allows an exclusion for a named driver.
 
 [5]
 
 Downing persuasively argues, however, that Insurance Code section 11580.1 applies only to an “automobile liability policy,” not to a “motor vehicle liability policy” for commercial passenger vehicles.
 

 The Legislature has distinguished in the Insurance Code and the Vehicle Code between an automobile liability policy and a motor vehicle liability policy.
 
 {State Farm Fire & Casualty Co.
 
 v.
 
 Superior Court
 
 (1989) 215 Cal.App.3d 1455 [264 Cal.Rptr. 512].) An automobile liability insurance
 
 *1416
 
 policy is essentially defined by Insurance Code section 11580.1, which lists various provisions that must be contained within an automobile liability policy.
 
 [6]
 
 (215 Cal.App.3d at p. 1465.) Expressly excepted from compliance with section 11580.1 of the Insurance Code are those policies to which Vehicle Code section 16450 et seq. applies. (Ins. Code, § 11580.05.)
 
 [7]
 
 Vehicle Code section 16450, in turn, defines a “motor vehicle liability policy.”
 
 [8]
 

 The distinction coincides with the different financial responsibility requirements imposed upon commercial and noncommercial vehicles.
 
 [9]
 
 Owners of
 
 commercial
 
 passenger vehicles (unless they are self-insured or post a bond or cash deposit) must maintain a
 
 motor vehicle
 
 liability insurance policy. (Veh. Code, § 16500.)
 
 [10]
 
 In contrast, owners of noncommercial vehicles may satisfy the financial responsibility requirements with
 
 either
 
 an automobile liability policy or a motor vehicle liability policy. (Veh. Code, § 16054.)
 

 
 *1417
 
 In
 
 State Farm Fire & Casualty Co.
 
 v.
 
 Superior Court, supra,
 
 215 Cal.App.3d 1455, the court explained two key differences between the two types of policies. The first difference pertains to the process of proving financial responsibility. Owners of commercial passenger vehicles must maintain proof of financial responsibility at all times while conducting business. (Veh. Code, §§ 16500, 16502.) Thus, a motor vehicle liability policy, which is required for commercial passenger vehicles, must be certified. That is, a certificate of insurance must be issued to the Department of Motor Vehicles (DMV) as proof of financial responsibility as an incident to issuance of the policy. (Veh. Code, § 16450.) In contrast, owners or drivers of noncommercial vehicles need only prove financial responsibility to the satisfaction of the DMV after a driver has been in an accident. (Veh. Code, §§ 16050-16057.) An automobile liability policy need not be certified at the outset. (Veh. Code, § 16054, subd. (b);
 
 State Farm Fire & Casualty Co.
 
 v.
 
 Superior Court, supra,
 
 215 Cal.App.3d at pp. 1466-1469.)
 
 [11]
 

 The second key difference between the two types of policies pertains to the extent of coverage. A motor vehicle liability policy, which is required for commercial passenger vehicles, must cover all vehicles registered to or operated by the named insured. (Veh. Code, §§ 16450-16452;
 
 State Farm Fire & Casualty Co.
 
 v.
 
 Superior Court, supra,
 
 215 Cal.App.3d at pp. 1466-1469.) Coverage for an automobile liability policy, on the other hand, need not be as extensive. Pursuant to Insurance Code section 11580.1, coverage for an automobile liability insurance policy may be excluded for particular vehicles. (Ins. Code, § 11580.1, subd. (c)(8);
 
 State Farm Fire & Casualty Co.
 
 v.
 
 Superior Court, supra,
 
 215 Cal.App.3d at pp. 1466-1467.) And coverage may be excluded for particular operators. (Ins. Code, § 11580.1, subd. (d)(1);
 
 Associated Indem. Corp.
 
 v.
 
 King
 
 (1973) 33 Cal.App.3d 470 [109 Cal.Rptr. 190].) We perceive that this difference, too, is based upon a legislative intent to provide more stringent financial responsibility requirements upon owners of commercial vehicles.
 

 From our reading of the whole of this statutory scheme, we conclude that Insurance Code section 11580.1 defines the contents of an automobile liability policy but not a motor vehicle liability policy. Under the financial responsibility laws, Bell’s Ambulance Service was obligated to maintain a motor vehicle liability policy for its commercial passenger vehicles. (Veh.
 
 *1418
 
 Code, § 16500.)
 
 [12]
 
 Hence, it is immaterial to the dispute here that a driver exclusion is authorized by Insurance Code section 11580.1 for automobile liability policies.
 
 [13]
 

 B.
 
 Local Regulation
 

 Ambulance services are regulated and licensed by the California Highway Patrol (CHP). (Veh. Code, § 2500 et seq.; Cal. Code Regs., tit. 13, § 1100 et seq.) Vehicle Code section 2512 explicitly authorizes local authorities to adopt more restrictive regulations of ambulance services.
 
 [14]
 
 Thus, in
 
 Sievert
 
 v.
 
 City of National City
 
 (1976) 60 Cal.App.3d 234 [131 Cal.Rptr. 358], the court held that in light of that statutory authorization for local regulations, the city’s ordinance requiring a permit to operate within the city was not preempted by state law. (See also
 
 Bell
 
 v.
 
 City of Mountain View
 
 (1977) 66 Cal.App.3d 332, 338-339 [136 Cal.Rptr. 8] [city ordinance requiring ambulance license not preempted]; but see
 
 People
 
 v.
 
 Moore
 
 (1964) 229 Cal.App.2d 221 [40 Cal.Rptr. 121] [state laws governing licensing of drivers completely occupy the field and render local legislation invalid].)
 

 With respect to financial responsibility obligations in particular, again the state statutory scheme leaves room for supplemental local legislation. The statewide regulations issued by the CHP commissioner require ambulance services to meet the financial responsibility requirements imposed upon commercial passenger vehicles pursuant to Vehicle Code section 16500. (Cal. Code Regs., tit. 13, § 1106.2.)
 
 [15]
 
 Vehicle Code section 16500, in turn, provides that owners of commercial passenger vehicles not regulated by the
 
 *1419
 
 Public Utilities Commission (PUC) are required either to maintain motor vehicle liability insurance, to provide a bond or cash deposit, or to qualify as a self-insurer.
 
 [16]
 
 Vehicle Code section 16501 expressly allows local regulation of commercial passenger vehicles as well.
 
 [17]
 
 (See, e.g.,
 
 Bond
 
 v.
 
 Holloway
 
 (1920) 45 Cal.App. 634 [188 P. 577] [city ordinance required copy of insurance policy to be filed with city as condition for obtaining permit].)
 

 Explicitly, then, the state statutes have left room for local regulation. Vehicle Code section 2512 permits local regulation of ambulance services, and Vehicle Code section 16501 allows local authorities to impose financial responsibility requirements upon commercial passenger vehicles. In light of this statutory authorization given to local authorities, the Sonoma County ordinance unquestionably has full legal force and effect.
 
 [18]
 

 C.
 
 Compulsory Insurance Coverage
 

 As we have already observed, owners of ambulance services must comply with the financial responsibility requirements imposed upon owners of commercial passenger vehicles. (Cal. Code Regs., tit. 13, § 1106.2.) That is, (unless they are self-insured or post a bond or cash deposit) they must provide proof to the DMV of motor vehicle liability insurance with coverage of at least $15,000 for each person injured or killed. (Veh. Code, §§ 16450, 16500.) And the insurer providing the certificate of insurance must give notice to the DMV within 10 days after the insurance is canceled. (Veh. Code, § 16433.)
 

 The relevant provisions of the Sonoma County ordinance supplement the state financial responsibility laws by requiring ambulance services to maintain liability insurance coverage of at least $1 million; to name the county as an additional insured under the policy; to file a certificate of insurance with the county prior to issuance of a permit; and to include within the policy a
 
 *1420
 
 provision requiring 15 days’ notice to the county prior to cancellation or modification of the policy.
 
 [19]
 
 (See fn. 1,
 
 ante.)
 

 In this appeal, Downing makes an argument somewhat different from her argument below. In the proceedings below, Downing argued that the driver exclusion endorsement was invalid as it conflicted with the provision of the ordinance requiring Bell to maintain liability insurance coverage, On appeal, Downing emphasizes the advance notice requirement contained within the Sonoma County ordinance (fn. 1,
 
 ante),
 
 and she persuasively argues that the consequence of that advance notice requirement is that coverage remains in effect until notice has been given to the county and the 15-day waiting period has expired.
 

 The Supreme Court has recognized that when, as here, insurance coverage is required by law as a condition to doing business, the statutory provisions creating that requirement are incorporated into the insurance contract. “The obligations of such a policy are measured and defined by the pertinent statute, and the two together form the insurance contract. . . . [T]he insurance carrier is done no injustice when its rights are determined thereunder. [<]Q Any provisions of such a policy which are in conflict with the pertinent statutes are nullified and superseded to that extent, particularly where the policy itself, expressly so provides.” (6c Appleman, Insurance Law and Practice (Buckley ed. 1979) § 4463, pp. 615-617, fns. omitted; quoted in
 
 Samson
 
 v.
 
 Transamerica Ins. Co.
 
 (1981) 30 Cal.3d 220, 231 [178 Cal.Rptr. 343, 636 P.2d 32]; accord,
 
 Transamerica Ins. Co.
 
 v.
 
 Tab Transportation, Inc.
 
 (1995) 12 Cal.4th 389, 398-399 [48 Cal.Rptr.2d 159, 906 P.2d 1341]; see also
 
 Wildman
 
 v.
 
 Government Employees’ Ins. Co.
 
 (1957) 48 Cal.2d 31, 37-40 [307 P.2d 359].)
 

 That principle was applied in
 
 Fireman’s Fund Ins. Co.
 
 v.
 
 Allstate Ins. Co.
 
 (1991) 234 Cal.App.3d 1154 [286 Cal.Rptr. 146], where the insured, a highway transporter, was required by state law (Pub. Util. Code, former §§ 3631, 3634) to maintain insurance coverage and to give 30 days’ notice of cancellation to the PUC. The insured substituted insurance carriers, changing from Fireman’s Fund to Allstate, but failed to notify the PUC of the change. In a dispute between the two insurance carriers, the court held that the effect of noncompliance with the statutory advance notice requirement is continued coverage; hence, Fireman’s Fund, the original insurer, remained liable despite the cancellation of its policy.
 

 
 *1421
 
 The court reasoned that the financial responsibility law is intended to protect the public from inadequately insured transporters, and this statutory purpose is advanced by enforcing continuous coverage. Moreover, the court observed that providing continuous coverage until the PUC receives notice may deter lax practices by insurers. And finally, the court noted that the initial burden on Fireman’s Fund was minimal; Fireman’s Fund could easily have eliminated its exposure simply by giving the required notice.
 
 (Fireman’s Fund Ins. Co.
 
 v.
 
 Allstate Ins. Co., supra,
 
 234 Cal.App.3d at pp. 1161-1166.)
 

 More recently, the Supreme Court followed the
 
 Fireman’s Fund
 
 case and held that where there had been no compliance with the notice requirement, coverage on a liability policy obtained by a highway transporter continued in effect even though the one-year policy had expired by its terms. (Transamer
 
 ica Ins. Co.
 
 v.
 
 Tab Transportation, Inc., supra,
 
 12 Cal.4th 389.) The court affirmed the principle that the regulatory scheme requiring highway transporters to maintain liability insurance and to give notice of cancellation to the PUC is incorporated into the insurance policy. The court then went on to hold that a PUC regulation declaring that the insurance policy remains in force until canceled served to amend the original provisions of the insurance policy so that the policy could not lapse by reason of the expiration of the policy term; rather, coverage continued in accordance with the regulatory scheme until the policy was canceled and the PUC was notified of the cancellation.
 

 In the present case, the parties have not cited the
 
 Transamerica
 
 case in their briefs. Empire seeks to distinguish the
 
 Fireman’s Fund
 
 case on two grounds. First, Empire emphasizes that the financial responsibility law (Pub. Util. Code, former § 3634) applicable in the
 
 Fireman’s Fund
 
 case provided for immediate suspension of the transporter’s permit in the event the transporter failed to maintain adequate liability protection. Empire argues that in the present case, in contrast, there is no certainty that Bell’s permit to operate the ambulance service would have been suspended even if the county had been notified of the driver exclusion.
 

 We reject the argument. The fact that a transporter would be
 
 immediately
 
 suspended was not determinative of the court’s decision in
 
 Fireman’s Fund.
 
 Rather, the court reasoned that the statutory scheme as a whole was intended to enforce continuous coverage during the life of the transporter’s permit. Here, too, the financial responsibility laws reflect an intent to compel continuous coverage. The Sonoma County ordinance requires an ambulance service to obtain a permit from the county before operating; and the permit-tee must maintain insurance coverage. The ordinance further provides that a
 
 *1422
 
 permit may be suspended or revoked if the ambulance service is operated in violation of any applicable law or regulation pertaining to ambulance operations. (Sonoma County Code, § 28-5(j)(10).) As already noted, the CHP regulation requires an ambulance service to comply with the financial responsibility requirements of the Vehicle Code. (Cal. Code Regs., tit. 13, § 1106.2.) Within this context, we infer that the purpose of the 15-day notice to the county is to enable the county to suspend or revoke the permit of the ambulance service when adequate insurance coverage is not maintained.
 

 Empire finds a second distinction between the present case and the
 
 Fireman’s Fund
 
 case in that the insured in that case was regulated by the PUC while Bell here was not. In our view, however, that distinction is inconsequential. The financial responsibility requirements imposed upon highway transporters by the Public Utilities Code are analogous to those imposed upon ambulance services. Ambulance services, like highway transporters, are required to obtain liability insurance and to submit proof to the regulatory agency.
 
 [20]
 
 The regulatory schemes for both ambulance services and highway transporters require advance notice of cancellation to the regulatory agency. Both regulatory schemes are designed to protect the public from financially irresponsible owners of vehicles.
 
 [21]
 

 The fact that ambulance services are governed both by state law and by local ordinance does not denigrate the legal force of the Sonoma County ordinance. The Sonoma County ordinance is, as we have explained above, no less binding than a state law. Accordingly, the provisions of the ordinance, requiring Bell to maintain insurance coverage and requiring advance notice to the county of any modification or termination of coverage, are incorporated into the insurance policy
 
 [22]
 

 
 *1423
 
 Empire additionally argues that under the terms of the ordinance the insurer itself has no duty to notify the county of any change in liability coverage; hence, Empire should not be penalized for the absence of notice. This argument, however, finds no support in the case law. In both
 
 Fireman’s Fund
 
 and
 
 Transamerica,
 
 the courts placed the burden on the insurer, even though the statute itself did not specify who must undertake to give notice.
 
 [23]
 
 The Supreme Court explained as follows: “An insurer that files with the PUC a ‘certificate of insurance’ as proof that a highway carrier has insurance, as was done here, remains liable on its policy until that policy is canceled by giving the requisite 30 days’ written notice to the PUC. . . . [<fl] In addition to providing an efficient means for the PUC to administer the Act’s financial responsibility requirements imposed on highway carriers, the certificate of insurance on file with the PUC serves as assurance that the public is protected in the event of an accident involving a particular highway carrier. These important considerations far outweigh the slight burden imposed by statute on an insurer of providing the PUC with 30 days’ written notice of cancellation of a liability policy issued to a highway carrier.”
 
 (Transamerica Ins. Co.
 
 v.
 
 Tab Transportation, Inc., supra,
 
 12 Cal.4th at pp. 402-403; see also
 
 Fireman’s Fund Ins. Co.
 
 v.
 
 Allstate Ins. Co., supra,
 
 234 Cal.App.3d at pp. 1165-1166.)
 

 So, too, in the present case, the certificate of insurance provided to the county by Empire as proof of Bell’s compliance with the financial responsibility requirements served as assurance that Bell’s insurance coverage remained in full force and effect.
 
 [24]
 
 Until the county was notified otherwise, Empire remained liable on its policy.
 
 [25]
 

 In summary, we conclude that the trial court erred in ruling as a matter of law that Empire has no duty to defend or indemnify. The effect of
 
 *1424
 
 the Sonoma County ordinance is to provide for continuous insurance coverage until the county is notified and the 15-day waiting period has expired. In the absence of notice to the county of the driver exclusion endorsement, coverage under the Empire policy continued.
 

 The record in this case, however, does not reflect whether notice of the driver exclusion was given to the county.
 
 [26]
 
 In the proceedings below, the parties did not address the notice requirement. Downing argued in opposition to Empire’s summary judgment motion that the driver exclusion was ineffective as it violated the provision of the ordinance requiring Bell to maintain liability insurance coverage. Empire responded with the legal argument that the Sonoma County ordinance was preempted by the Insurance Code. Because the trial court had no occasion to examine whether a factual dispute exists on whether the county was notified of the driver exclusion endorsement, we remand the matter for further proceedings on the summary judgment motion.
 

 The judgment is reversed. Costs are awarded to appellant Downing.
 

 Strankman, P. J., and Stein, J., concurred.
 

 Respondent’s petition for review by the Supreme Court was denied September 17, 1997.
 

 [1]
 

 The pertinent provision of the ordinance is as follows: “(p) Liability Insurance. HQ (1) General Liability for Vehicle Operation. The permittee shall obtain, and keep in force during the term of said permit, public liability and bodily injury insurance, issued by a company approved by the [CJounty of Sonoma and authorized to do business in the State of California, insuring the owner and also naming the county as an additional insured of such ambulance against loss by reason of injury or damage that may result to persons or property from negligent operation or defective construction of such ambulance, or from violation of this chapter or of any other law of the [S]tate of California, or the United States. Said policy shall be in the sum of not less than one million dollars ($1,000,000.00) combined single limit for personal injury and property damage for each vehicle in any one accident. Workers’ compensation insurance shall be carried covering all employees of the permit holder. Copies of the policies, or certificates evidencing such policies, shall be filed with the EMS agency medical director before a permit is issued. All policies shall contain a provision requiring a minimum of fifteen (15) calendar days’ notice to be given to the county prior to cancellation, modification or reduction in limits. The amounts of public liability insurance for bodily injury or property damage shall be subject to review and adjustment by the board annually at the board’s option. Municipal fire department and fire district ambulance services may submit their self-insurance programs for review and approval by the county.” (Sonoma County Code, § 28-5(p).)
 

 [2]
 

 The form states in pertinent part: “This endorsement changes the policy. Please read it carefully. [U Driver Exclusion. fiO This endorsement modifies insurance provided .... We will not be liable for any accidents or losses while a covered auto is driven by: Wayne F. Bell.”
 

 [3]
 

 Wayne Bell had argued in opposition to the summary judgment motion that he understood the driver exclusion to exclude coverage only for himself personally, not for the company; that the insurance agent misrepresented the effect of that exclusion endorsement and coerced him into signing it. The trial court found no triable issues of fact on these defenses. That portion of the trial court’s ruling is not challenged on appeal.
 

 [4]
 

 Wayne Bell and Bell’s Ambulance Service have joined in the appeal. We are informed that in a separate personal injury action Downing obtained a sizable judgment against Bell. Bell then assigned to Downing its rights under the insurance policy.
 

 [5]
 

 Insurance Code section 11580.1, subdivision (d), provides that “the insurer and any named insured may, by the terms of any policy of automobile liability insurance to which subdivision (a) applies, or by a separate writing relating thereto, agree as to . . . the following limitations, the agreement to be binding upon every insured to whom such policy applies and upon every third party claimant: [1 (1) That coverage and the insurer’s obligation to defend under the policy shall not apply . . . while any motor vehicle is being used or operated by a natural person or persons designated by name.”
 

 [6]
 

 Each subdivision of Insurance Code section 11580.1 refers to an “automobile liability policy.” In particular, subdivision (d) permits certain limitations within “any policy of automobile liability insurance to which subdivision (a) applies.” Subdivision (a), in turn, refers to a “policy of automobile liability insurance described in Section 16054 of the Vehicle Code.”
 

 Section 16054, subdivision (b), of the Vehicle Code provides: “Any automobile liability policy or bond referred to in this section shall comply with the requirements of Section 16056 and Sections 11580, 11580.1, and 11580.2 of the Insurance Code, but need not contain provisions other than those required by those sections, and shall not be governed by Chapter 3 (commencing with Section 16430).”
 

 [7]
 

 Section 11580.05 of the Insurance Code provides: “The Legislature declares that the public policy of this state in regard to provisions authorized or required to be included in policies affording automobile liability insurance or motor vehicle liability insurance issued or delivered in this state shall be as stated in this article, that this article expresses the total public policy of this state respecting the content of such policies .... The Legislature further declares that it is the intent of the Legislature that the requirements set forth in Article 2 (commencing with Section 16450) of Chapter 3 of Division 7 of the Vehicle Code shall apply only to an owner’s policy or operator’s policy of liability insurance certified as provided in Section 16431 of the Vehicle Code as proof of ability to respond in damages .... Except as provided above, any other policy issued or delivered in this state affording liability insurance with respect to ownership, maintenance, or use of a motor vehicle shall comply with the requirements set forth in Sections 11580, 11580.1, and 11580.2.”
 

 [8]
 

 A motor vehicle policy is defined as “an owner’s policy or an operator’s policy, or both, of liability insurance, certified as provided in Section 16431 as proof of financial responsibility . . . .” (Veh. Code, § 16450.) An owner’s policy covers all users of vehicles owned by the insured. (Veh. Code, § 16451.) An operator’s policy covers all vehicles used by the named insured. (Veh. Code, § 16452.)
 

 [9]
 

 A
 
 similar distinction is drawn between the two types of policies with respect to policy cancellations and nonrenewals. (Compare Ins. Code, §§ 660-669.5, 11580.09 [automobile liability policies] with Ins. Code, §§ 657, 670, 675.5, subd. (d)(4), 676, 676.2 [commercial motor vehicle liability policies]; see generally,
 
 National Indemnity Co.
 
 v.
 
 Garamendi
 
 (1991) 233 Cal.App.3d 392, 404-405 [284 Cal.Rptr. 278].)
 

 [10]
 

 Operators of ambulance services must comply with the financial responsibility requirements imposed by Vehicle Code section 16500 upon owners of commercial passenger vehicles. (Cal. Code Regs., tit. 13, § 1106.2.)
 

 [11]
 

 An automobile liability policy
 
 may
 
 be certified. (Ins. Code, § 655; Veh. Code, § 16431.) However, only a motor vehicle liability policy
 
 must
 
 be certified as an incident to issuance of the policy. (Veh. Code, §§ 16450, 16054, subd. (b).) The certificate of insurance must certify that notice will be given to the DMV within 10 days after the insurance is canceled. (Veh. Code, § 16433.)
 

 [12]
 

 At oral argument, counsel for Empire argued that the policy here was not a motor vehicle policy because it lacked the broad coverage of an owner’s or operator’s policy and was not certified to the DMV. As we will explain in part C,
 
 post,
 
 the requirements of the financial responsibility laws are implicitly made a part of the insurance policy. Hence, we do not examine whether the Empire policy, as written, complied with the statutory requirements of a motor vehicle policy. It is sufficient for our purposes that the policy was obligated to comply.
 

 [13]
 

 Downing’s arguments in this appeal are confined to the inapplicability of Insurance Code section 11580.1. Empire chose not to address this issue in its brief. In the absence of any argument or briefing, we do not reach the question whether an exclusion of a designated driver within a motor vehicle liability policy is void under state law. Instead we confine our examination in parts B and C below to the impact of the Sonoma County ordinance.
 

 [14]
 

 Vehicle Code section 2512 provides in pertinent part: “(a) The commissioner [of the CHP] . . . shall adopt and enforce reasonable regulations regarding ... the operation, equipment, and certification of drivers of all ambulances used for emergency services. . . . [<!] (c) This section shall not preclude the adoption of more restrictive regulations by local authorities, except that inspection of ambulances [by the CHP] pursuant to Section 2510 shall not be duplicated by local authorities. . . .”
 

 [15]
 

 “No owner shall use any ambulance, or permit any ambulance to be used, to transport passengers for hire without maintaining ability to respond in damages as required by Vehicle Code section 16500.” (Cal. Code Regs., tit. 13, § 1106.2.)
 

 [16]
 

 Similar requirements are imposed upon common carriers regulated by the PUC (Pub. Util. Code, §§ 4010 [passenger carriers]; 5161 [moving companies]; 5391 [charter carriers]; 5503 [air transport].)
 

 Indeed, financial responsibility obligations are imposed upon every driver and every owner of a motor vehicle (Veh. Code, §§ 16020, 16021).
 

 [17]
 

 The existence of local regulations is further contemplated in Vehicle Code section 40001, which makes it unlawful to operate a vehicle in violation of state
 
 or local
 
 regulations.
 

 [18]
 

 The Sonoma County ordinance is entitled the “Emergency and Pre-Hospital Medical Services System Ordinance.” It appears to be designed to implement the “Emergency and Pre-Hospital Emergency Care Personnel Act” (Health & Saf. Code, § 1797 et seq.). That act establishes a state office to coordinate local plans for emergency medical services systems. Among other things, the act requires ambulance operators to be specially trained. (Health & Saf. Code, § 1797.160.)
 

 [19]
 

 The Empire policy issued to Bell provides in pertinent part: “In addition to the Cancellation Provision contained in the Common Policy Conditions, you agree that if we have made government regulatory filings or there is a loss payee or an additional ‘insured,’ the effective date of cancellation shall not be earlier than that date required to terminate such governmental filings or comply with notice requirements to the loss payee, or additional ‘insured.’ ”
 

 [20]
 

 In a very recent decision, the Supreme Court distinguished the
 
 Transamerica
 
 case where the statutory scheme was not a compulsory insurance law. The statute did not require the insured, an aircraft owner, to maintain liability insurance; instead, the statute required only proof of insurance after an accident. In that case, the court held that the statutory requirement of advance notice to the Department of Aeronautics applied only to policies filed after an accident.
 
 (Escobedo
 
 v.
 
 Estate of Snider
 
 (1997) 14 Cal.4th 1214 [60 Cal.Rptr.2d 722, 930 P.2d 979].)
 

 [21]
 

 The Sonoma County ordinance declares that it is intended to “provide for the public health, safety and welfare in the use of ambulance and other pre-hospital emergency care resources by the establishment of effective standards for the operation, equipment and personnel of ground ambulance and air ambulance services.” (Sonoma County Code, § 28-2(a).)
 

 [22]
 

 By the express provisions of the insurance policy, coverage continues after a
 
 cancellation
 
 of the policy until notice to a loss payee or an additional insured. (See fn. 19,
 
 ante.)
 
 Here, of course, the driver exclusion endorsement was a modification, not a cancellation of the policy. Nevertheless, the provisions of the Sonoma County ordinance, requiring notice of cancellation
 
 or modification,
 
 are incorporated into the insurance policy and are binding on the insurer.
 

 [23]
 

 Public Utilities Code former section 3634 and the PUC General Order provide that the insurance policy “shall not be cancelable on less than 30 days’ written notice to the [PUC] . . . .” (See
 
 Fireman's Fund Ins. Co.
 
 v.
 
 Allstate Ins. Co., supra,
 
 234 Cal.App.3d at p. 1157.)
 

 [24]
 

 We grant Downing’s request for judicial notice, unopposed by Empire, that a certificate of insurance was issued by Empire and submitted to the county. (Evid. Code, § 452, subd. (c).)
 

 [25]
 

 Empire seeks to avoid liability under the policy based upon a disclaimer contained in the certificate of insurance: “Should any of the above described policies be canceled before the expiration date thereof, the issuing company will endeavor to mail 10 days written notice to the certificate holder named to the left [Sonoma County Emergency Services Agency], but failure to mail such notice shall impose no obligation or liability of any kind upon the company, its agents or representatives.”
 

 We summarily reject the argument. A certificate of insurance is merely evidence that a policy has been issued. (Ins. Code, § 384.) It is not a contract between the insurer and the certificate holder. (13A Appleman, Insurance Law and Practice,
 
 supra,
 
 § 7530 (1996-1997 pocket supp.) p. 20;
 
 United States P. & Fdry. Co.
 
 v.
 
 United States F. & G. Co.
 
 (5th Cir. 1974) 505 F.2d 88, 89.) Obviously Empire could not, simply by inserting a provision in the certificate of insurance, eliminate its obligation under state law to give notice of insurance cancellation to the DMV. (Veh. Code, § 16433.) Nor can Empire eliminate its obligation
 
 *1424
 
 pursuant to the Sonoma County ordinance to give advance notice of insurance cancellation or modification to the county.
 

 [26]
 

 Downing has asked this court to take judicial notice of a declaration of a county official attesting that no notice was received. As this declaration does not qualify as an official act, it is not a proper item for judicial notice. (E.g.,
 
 Childs
 
 v.
 
 State of California
 
 (1983) 144 Cal.App.3d 155, 162 [192 Cal.Rptr. 526] [declaration describing state agency’s mailing practices not an official act].) Accordingly, we deny the request.